# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

BEAR WARRIORS UNITED, INC., a Florida Not for Profit Corporation,
*Plaintiff-Appellee,*

v.

ALEXIS LAMBERT, in her official capacity as Secretary of the FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION,
*Defendant-Appellant.*

Appeal from the U.S. District Court for the
Middle District of Florida, No. 6:22-cv-2048 (Mendoza, J.)

## TIME-SENSITIVE MOTION FOR STAY PENDING APPEAL

Jeffrey Brown
Department of Environmental Protection
390 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000
Telephone: (850) 245-2242
Jeffrey.Brown@FloridaDEP.gov

Jeffrey M. Harris
Bryan Weir
Nicholas B. Venable*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com

*Supervised by principals of the firm admitted
to practice in Virginia*

*Counsel for Defendant-Appellant*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 and 26.1-2, the undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1. Bear Warriors United, Inc. – Appellee

2. Blackner, Leslie G. – Counsel for Appellee Bear Warriors United

3. Blackner, Stone & Associates – Counsel for Appellee Bear Warriors United

4. Blome, Jessica L. – Counsel for Appellee Bear Warriors United

5. Bradford, Susann M. – Counsel for Appellee Bear Warriors United

6. Brown, Jeffrey – Counsel for Appellant Secretary Lambert

7. Colton, Bryan E. – Counsel for Appellee Bear Warriors United

8. Corbani, Kelley F. – Counsel for Appellant Secretary Lambert

9. Consovoy McCarthy PLLC – Counsel for Appellant Secretary Lambert

10. Greenfire Law, PC – Counsel for Appellee Bear Warriors United

11. Harris, Jeffrey M. – Counsel for Appellant Secretary Lambert

12. Lambert, Alexis, in her official capacity as Secretary of the Florida Department of Environmental Protection – Appellant

13. Mendoza, Honorable Carlos E. – Judge for the United States District Court for the Middle District of Florida

14. Price, Honorable Leslie H. – Magistrate Judge for the United States District Court for the Middle District of Florida

15. Rivo, Lily A. – Counsel for Appellee Bear Warriors United

16. Venable, Nicholas B. – Counsel for Appellant Secretary Lambert

17.  Weir, Bryan – Counsel for Appellant Secretary Lambert

Dated: May 29, 2025                    /s/ *Jeffrey M. Harris*
                                Counsel for Defendant-Appellant

# TABLE OF CONTENTS

Certificate of Interested Persons .......................................................................C-1

Introduction ................................................................................................... 1

Background ...................................................................................................... 2

Argument......................................................................................................... 4

    I.     DEP's appeal is likely to succeed on the merits. ............................... 5

         A. Plaintiff lacks standing to secure a prospective injunction. ........................ 5

         B. Plaintiff failed to prove proximate causation under the ESA as a matter of law.......................................................................... 12

         C. The Injunction violates Tenth Amendment anti-commandeering law.... 15

    II.    DEP will be irreparably harmed in the absence of a stay. ............................ 18

    III.   The balance of the equities supports granting a stay. ..................................... 18

    IV.   DEP respectfully requests a decision on this motion, or an administrative stay, by June 17. ........................................................... 20

Conclusion .....................................................................................................21

Certificate of Compliance ...............................................................................22

Certificate of Service.......................................................................................22

# INTRODUCTION

Plaintiff, an environmental organization whose members claim to have been emotionally and financially impacted by past deaths of manatees, sued the Florida Department of Environmental Protection (DEP) under the Endangered Species Act (ESA) to prevent DEP from issuing permits for septic tanks that are allegedly contributing to manatee deaths in the Indian River Lagoon. The district court agreed down the line, entering a sweeping injunction that unconstitutionally commandeers the wrong state agency to implement a federal statute. Worse still, these claims should have failed at the starting gate because the agency's actions are too attenuated from any injuries to manatees to support either Article III standing or proximate causation under the ESA.

Under the district court's injunction, DEP must create entirely new manatee feeding, monitoring, and reporting programs just 19 days from now—something it has never done before and is not statutorily authorized to do. Thirty days after that, DEP will be commandeered to enforce the ESA against individual polluters by halting all permits for new septic tanks near the Indian River Lagoon. On that same day, it must also apply for an incidental take permit under the ESA, a course of action that will not even redress Plaintiff's injuries in this case.

Those sweeping remedies are unlawful on their own terms, but no remedy should have been ordered in the first place. Plaintiff does not have standing to obtain this injunction because its members are not likely to be injured in a way that DEP caused or that the injunction can address. And Plaintiff's alleged chain of causation—from

permits, to septic tanks, to pollutants, to food supply, to manatees—is far too attenuated to give rise to liability under the ESA.

DEP respectfully requests a stay of this extraordinary injunction pending appeal. If the injunction goes into effect as scheduled, DEP will suffer irreparable harm in the form of unrecoverable costs of creating new manatee programs from whole cloth. And the equities weigh strongly against indefinitely enjoining construction by third-party property owners who are not even parties to this litigation. A stay is also especially appropriate given that the federal government has recently proposed regulations that would vitiate Plaintiff's entire theory of "indirect" harm under the ESA.

This Court should stay the injunction pending its decision on the merits of DEP's appeal. Given that several key provisions of the injunction take effect on June 17, DEP respectfully requests a decision on this motion, or an administrative stay, by that date.

## BACKGROUND

DEP is the state agency vested with the "power and the duty to control and prohibit pollution of air and water." Fla. Stat. § 403.061. On July 1, 2021, the Florida Department of Health transferred to DEP responsibility for "permitting, inspection, data management, and tracking of" septic tanks. R.59-19 at 3. As part of its statutory duty to regulate water pollution, DEP has adopted a management plan aimed at ensuring that pollution in the North Indian River Lagoon does not exceed the levels approved by the U.S. Environmental Protection Agency under the federal Clean Water

Act. R.95-2; R.94-5. DEP has no authority or expertise regarding wildlife population management or restoration, which Florida law instead vests in the Fish & Wildlife Conservation Commission. Fla. Const. Art. 4 § 9; Fla. Stat. §§ 20.331, 379.2433.

Plaintiff is an environmental group whose members are concerned about the effects of excess nutrients released by septic tanks on the manatee population in the Indian River Lagoon. R.59 at 4-7. They contend that excess nitrogen from septic tanks has caused microalgae blooms that threaten seagrass levels in the lagoon, which is the manatees' natural food source. *Id.* at 10-11, 17.

On November 4, 2022, Plaintiff sued DEP under the ESA's citizen-suit provision. R.1. Plaintiff alleges that DEP violated the ESA by "taking" endangered manatees, which is defined to include "harm" or "harass." 16 U.S.C. §§ 1538(a)(1)(B), 1532(19). Federal regulations, in turn, have interpreted the word "harm" in the "take" definition to include "significant habitat modification or degradation…." 50 C.F.R. § 17.3. Plaintiff has only alleged that DEP has "taken" manatees in this indirect sense, by allowing pollution that impairs seagrass levels in the lagoon and, in turn, affects manatees.

DEP moved to dismiss Plaintiff's operative complaint, arguing that it was immune from suit under the Tenth and Eleventh Amendments, that Plaintiff lacked standing, and that DEP was not the proximate cause of any harm to manatees. R.64. The parties also cross-moved for summary judgment. R.91, 92. The district court denied

3

DEP's motion to dismiss, R.112, and the parties' motions for summary judgment, concluding that a trial was necessary to establish whether there was ongoing harm or taking of manatees, R.134 at 15.

After a two-day bench trial, the court held that Plaintiff was entitled to judgment and an injunction, because "legacy pollutants" in the lagoon "have caused manatee takings in the past," and were likely to do so in the future unless DEP took affirmative steps to curtail nitrogen introduced into the lagoon. R.172 at 12-17. On May 19, 2025, the court entered Plaintiff's proposed injunction essentially unchanged, R.190, without addressing objections DEP raised in a response to the proposed injunction, R.180. DEP has appealed both the judgment, R.181, and the injunction, R.195.

DEP moved before the district court to stay the injunction pending appeal, requesting a ruling by May 28 to preserve the possibility of appellate review before the injunction takes effect. R.191. The court denied DEP's request for a ruling by that date and stated that the motion would be addressed in a later order. R.193. The district court's denial constitutes a "fail[ure] to afford the relief requested." Fed. R. App. P. 8(a)(2)(A)(ii).

## ARGUMENT

In deciding whether to grant a stay pending appeal, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in

the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009).

## I.    DEP's appeal is likely to succeed on the merits.

This Court is likely to conclude that Plaintiff was not entitled to the sweeping injunction the district court entered, for at least three independent reasons: Plaintiff lacks Article III standing; Plaintiff failed to establish proximate causation linking any alleged ESA violation to DEP's actions; and the injunction violates the anti-comman-deering doctrine.

### A. Plaintiff lacks standing to secure a prospective injunction.

Plaintiff lacks standing to obtain the prospective injunction the district court issued in this case. To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Further, "[i]n exercising their equitable powers federal courts must recognize '[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983).

**1.**    This Court is likely to reverse the injunction in its entirety for lack of Article III standing. First, Plaintiff has not shown sufficient likelihood of future injury. The injury-in-fact requirement demands that "the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to

occur soon." *All. for Hippocratic Med.*, 602 U.S. at 381 (citation omitted). And a plaintiff seeking a prospective injunction must show "a sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111.

The district court concluded that the injury-in-fact requirement was satisfied by Plaintiff's members who claim to have seen dead manatees or lost business from declining manatee populations. R.172 at 7-8. The court concluded that "Plaintiff's members are like[ly] to encounter dead manatees again" and noted that Plaintiff's expert had seen a dead manatee calf in the months before trial. *Id.* at 8 & n.4.

Those facts by themselves do not establish a sufficient likelihood of future injury. Plaintiff's expert could not establish that the manatee calf he saw died because of any cause traceable to *DEP's* actions or omissions. This case has focused on a manatee Unusual Morality Event, defined under federal law as an "unexpected" "die-off of any marine mammal population." 16 U.S.C. § 1421h(9). But the district court acknowledged that the Unusual Mortality Event in the Indian River Lagoon had ended and that "the last necropsy that showed manatee emaciation occurred two years ago." R.172 at 19. The court nonetheless downplayed the importance of these facts because the death of "even one" member of an endangered species constitutes a taking. *Id.* But the end of the Unusual Mortality Event and the absence of any proven manatee deaths from emaciation in the last two years are clearly relevant to Article III standing—*i.e.*, the likelihood that Plaintiff's members will be injured in the future.

Second, Plaintiff has not established that its speculative future injuries will be caused by DEP. "[P]laintiffs attempting to show causation generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'" *All. for Hippocratic Med.*, 602 U.S. at 383. Further, "[t]he causation requirement also rules out attenuated links—that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *Id.*

The district court's finding of present harm to Plaintiff's members rested on "legacy pollutants" in the Indian River Lagoon that "have caused manatee takings in the past." R.172 at 12-13. But DEP did not regulate septic tank permits before 2021, R. 59-19 at 3, and this regulatory handover occurred *after* the start of the manatee Unusual Mortality Event that has been a focus of this litigation, R.59 ¶ 24.

The district court concluded that the existence of "legacy pollutants" released by third parties meant that "FDEP would have to reduce nutrients entering the IRL to a low enough level and for a long enough time for nutrients to cycle out of the system to allow seagrasses to return at significant levels." R.172 at 17. In other words, the injunction requires DEP to develop and launch entirely new regulatory programs to remedy harms previously caused by third parties not before the court, where DEP did not even have statutory authority to regulate those activities before 2021. The ESA "requires no affirmative conservation action by states or local governments." *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 92 F. Supp. 2d 1296, 1308 (M.D. Fla. 2000). But that is precisely

what the injunction demands, by compelling a state agency to take affirmative steps to create conservation programs on a highly truncated 30-day timetable. R.190.

Third, Plaintiff does not meet the redressability requirement for Article III standing. Redressability requires a demonstration that it is likely, not merely speculative, that an injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiff cannot show the relief it requested is likely to prevent future harm to its members. Given the extent of "legacy pollutants" the court found to exist in the lagoon, R.172 at 16, it is highly speculative to conclude that forcing DEP to apply for an incidental take permit will prevent any of Plaintiff's members from encountering another dead manatee. Indeed, malnutrition due to eutrophication is hardly the only cause of manatee deaths, so Plaintiff's members may have previously encountered (or will encounter) manatees that died from unrelated causes. *See* Florida Fish and Wildlife Conservation Commission, *Descriptions of Manatee Death Categories* (last visited May 20, 2025) https://perma.cc/65B8-Z8AK (describing watercraft, canal locks, poaching, and fishing equipment as other causes of manatee deaths).

The district court cited *Loggerhead Turtle*, where this Court concluded that sea turtle plaintiffs had standing to sue a county government under the ESA. But that case is readily distinguishable. *Loggerhead Turtle* involved "a regulatory entity that exerts control over the use of something that allegedly takes protected wildlife." *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 148 F.3d 1231, 1251 (11th Cir. 1998). Here, DEP had no control over the majority of "legacy pollutants" the court found caused Plaintiff's

injury, and has no authority to implement the wildlife wellness programs required by the injunction, *see infra* 10-12. This Court has recognized in cases otherwise similar to *Loggerhead Turtle* that standing is not present where the defendant lacks "'absolute authority to issue environmental ordinances that would ... prevent plaintiffs' injuries.'" *BBX Cap. v. FDIC*, 956 F.3d 1304, 1313 (11th Cir. 2020). Those key causation and redressability differences similarly defeat standing here.

    **2.**    In addition to lacking Article III standing generally, Plaintiff lacks standing for several of the specific provisions of the injunction. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("standing is not dispensed in gross"). Both the requirement that DEP apply for an incidental take permit (ITP) and the requirement that it develop and implement three new manatee programs fail the causation and redressability requirements.

    The injunction's requirement that DEP apply for an ITP, R.190 ¶ 1, will fail to redress Plaintiff's injury for two independent reasons. First, these permits are discretionary, and there is no guarantee the U.S. Fish & Wildlife Service would grant DEP's application. *See* 16 U.S.C. § 1539(a)(1) (USFWS "may" grant a permit). Second, even if the permit were granted, DEP would be free to continue the very incidental taking that Plaintiff alleges is the source of its injury. *See* R.59 at 31 (complaining that "DEP has 'incidentally taken' manatees in the North IRL within the meaning of the ESA"). In

other words, applying for and receiving a permit would provide *explicit federal authorization* to continue the very conduct that Plaintiff complains of. This is the antithesis of redressability.

Moreover, several of the injunction's specific requirements direct DEP to perform activities outside its statutory authority. This Court has made clear that suing the wrong defendant creates insurmountable causation and redressability problems. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020). "[W]here, as here, a plaintiff has sued to enjoin a government official from enforcing a law, he must show, at the very least, that the official has the authority to enforce the particular provision that he has challenged, such that an injunction prohibiting enforcement would be effectual." *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021).

In *Jacobson*, the plaintiffs' injuries regarding ballot format were not "traceable to the Secretary [of State]—the only defendant in this action" because the officials responsible for ballot order were "independent officials under Florida law who are not subject to the Secretary's control." 974 F.3d at 1253. The lawsuit thus could not "provide redress" because "[i]f a plaintiff sues the wrong defendant, an order enjoining the correct official who has not been joined as a defendant cannot suddenly make the plaintiff's injury redressable." *Id.* at 1254-55. This is because, for the redressability prong, "'it must

be *the effect of the court's judgment on the defendant*—not an absent third party—'that redresses the plaintiff's injury, whether directly or indirectly.'" *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc).

Simply put, injunctive relief must be addressed to state officials who have the power to remedy the plaintiff's injury. If the defendant cannot effectuate the plaintiff's proposed remedy, then the plaintiff's injury is neither traceable to, nor redressable by, the defendant for purposes of Article III standing. *Jacobson*, 974 F.3d at 1253-56.

Here, the injunction's requirement that DEP "establish and implement a biomedical assessment program for manatees," "establish a supplemental feeding program for manatees," and "submit quarterly reports … documenting mortality statistics for both adults and neonatal manatees, as well as live manatee recoveries," R.190 ¶¶ 2-4, are directed at an agency without statutory authority to implement them. Under state law, DEP is not responsible for, has no authority to, and lacks the necessary expertise to monitor or provide care for marine mammal populations. Its authority is limited to managing air and water "pollution." Fla. Stat. § 403.061.

Instead, the Florida Constitution vests the authority over "management, protection, and conservation" of marine mammal life in the Florida Fish & Wildlife Conservation Commission. Fla. Const. Art. 4 § 9. Florida statutes further specify that ensuring the stability of manatee populations is the Commission's responsibility. *See, e.g.*, Fla. Stat. § 20.331 (the Commission shall "[m]onitor the status and health of marine life" and "[d]evelop restoration and management techniques"); § 379.2433.

The Commission, in other words, is the agency with authority under state law to carry out the injunction's remedial programs (even assuming the finding of liability and injunction were appropriate in the first place). It is an "independent" body "not subject to [DEP's] control." *Jacobson*, 974 F.3d at 1253. But Plaintiff chose to sue DEP, not the Commission. And "[a]ny persuasive effect a judicial order might have upon [other agencies], as absent nonparties who are not under the [DEP's] control, cannot suffice to establish redressability." *Id.* at 1254.

## B. Plaintiff failed to prove proximate causation under the ESA as a matter of law.

DEP is also likely to succeed on appeal because Plaintiff did not establish proximate causation as a matter of law. "In order for regulatory acts to result in ESA liability, there must be a *close connection* between *the liable actor's conduct* and habitat destruction or killing of endangered species." *Fla. Panthers v. Collier County*, 2016 WL 1394328, at *22 (M.D. Fla. Apr. 8, 2016) (emphasis added). Here, the causal connection between DEP's permitting and the current taking of any manatees is quite attenuated, as it depends on "legacy pollution"—much of which was permitted by a different agency years earlier—creating conditions in the lagoon that, along with other factors, impaired the ability of seagrasses to grow and, in turn, affected manatees' diets. R.172 at 16.

In finding proximate causation, the district court cited Justice O'Connor's concurrence in the *Sweet Home*. There, Justice O'Connor gave the example that a farmer who drained a pond on his property would be the proximate cause of the taking of any

endangered fish that died as a result. *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 713 (1995) (O'Connor, J., concurring). The district court found that analogy relevant here—DEP purportedly violated the ESA by harming the manatees' habitat. R.172 at 18; R.134 at 15. But the far more apt example from Justice O'Connor's concurrence is one she provided to show when proximate cause under the ESA would *not* be satisfied: where "'a farmer who tills his field and causes erosion that makes silt run into a nearby river which depletes oxygen and thereby [injures] protected fish.'" *Sweet Home*, 515 U.S. at 713.

DEP's activities here are even more attenuated than the farmer whose tilling indirectly affects endangered fish. DEP issues permits for structures built by third parties that may release chemicals to groundwater, which then travel underground to the lagoon, which may then contribute to the growth of algae, which could shade seagrasses, which could limit the growth of the seagrasses, and thereby purportedly harm a food source for manatees. The principal focus of Justice O'Connor's concurrence was on how proximate-cause principles should "alleviate" the harsh results of applying the ESA's stringent liability provisions to indirect takes of endangered species. *Id.* at 709, 713.

It strains causation beyond its breaking point to suggest that DEP's permitting regime foreseeably caused manatee takings. In a similar case involving licensing use of state water that allegedly damaged a whooping crane habitat, the Fifth Circuit concluded "licensing is, in this case, indirect and far removed from committing acts with

knowledge that a habitat will be adversely affected and the species killed." *Aransas Project v. Shaw*, 775 F.3d 641, 659 n.12 (5th Cir. 2014). The Fifth Circuit concluded the habitat harm was not foreseeable because it depended on "[c]ontingencies concerning permittees' and others' water use, the forces of nature, and the availability of particular foods to whooping cranes." *Id.* at 662.

Just as in that case, the foreseeability requirement is not met here as a matter of law because of factors including "remoteness, attenuation, or the natural and probable consequences of actions." *Id.* at 658. Indeed, Plaintiff's complaint correctly acknowledges that extreme weather events such as hurricanes would have contributed to any impacts on the types of food available to manatees. R.59.

In the district court's summary judgment order, it distinguished *Aransas Project* on the ground that it involved "extraordinary conditions" while in this one "eutrophication from OSTDS and wastewater treatment plant discharges can be predicted as a function of population growth and is not solely caused by natural weather events." R.134 at 14. But that summary misses key facts from both cases. *Aransas Project* involved private parties withdrawing water from rivers that led to "a significant reduction in freshwater inflow" which, combined with a drought, harmed the whooping crane habitat. 775 F.3d at 646-47.

This case similarly involved "extraordinary conditions" that contributed to eutrophication, such as hurricanes. R.59 ¶ 35. While the district court found that a healthy lagoon could recover from sea-grass loss from hurricanes, R.134 at 10, that does not

change the fact that both man-made and natural causes contributed to seagrass loss in this case, just as they both contributed to drought conditions in *Aransas Project* in unforeseeable ways. This Court is likely to conclude that DEP's permitting process did not foreseeably result in harm to manatees and thus causation was lacking as a matter of law.

### C. The Injunction violates Tenth Amendment anti-commandeering law.

The injunction also violates anti-commandeering principles. Under the Tenth Amendment, "the Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997). This prohibition is particularly concerned with situations where the federal government "require[s] the States in their sovereign capacity to regulate their own citizens" and "require[s] state officials to assist in the enforcement of federal statutes regulating private individuals." *Reno v. Condon*, 528 U.S. 141, 151 (2000).

That is precisely what the injunction requires here. The true targets of Plaintiff's lawsuit are private entities allegedly violating the ESA with environmentally damaging septic systems in the North Indian River Lagoon area. For those ESA violations, "any person" can file a suit for injunctive relief against those entities directly. *See* 16 U.S.C. § 1540(g)(1). But Plaintiff did not take that direct route. By taking the indirect route (*i.e.*,

suing DEP to force it to regulate as Plaintiff would prefer), Plaintiff effectively "commandeer[s] [the] State's … administrative machinery for federal purposes." *Burban v. City of Neptune Beach*, 920 F.3d 1274, 1281 (11th Cir. 2019).

The injunction requires that DEP "cease to issue new permits for the construction and installation of onsite sewage treatment and disposal systems" in the relevant area, effectively dictating how DEP implements its state-law regulatory authority. R.190 at 3. And the requirement that DEP apply for a take permit, R.190 at 1, is similarly premised on the idea that DEP is required to regulate third parties in a way that prevents any additional pollutants that might exacerbate the conditions that "legacy pollutants" are causing in the lagoon. Both of these judicial commands require DEP to exert regulatory power over private parties in a manner that commandeers state regulatory authority.

The district court rejected DEP's anti-commandeering argument, reasoning that because "[t]he ESA applies to '*any person*,'" "'[t]he anticommandeering doctrine does not apply when Congress evenhandedly regulates an activity in which both States and private actors engage.'" R.172 at 11. The court cited *Reno*, which rejected an anti-commandeering challenge to a statute that "regulate[d] the States as the owners of data bases." 528 U.S. at 151. But *Reno* distinguished that statute from one that "require[s] the States in their sovereign capacity to regulate their own citizens" or "require[s] state officials to assist in the enforcement of federal statutes regulating private individuals."

*Id.* Other courts have similarly explained that while federal law may "pervasively regu-late[] states as marketplace participants; the anti-commandeering rule comes into play only when the federal government calls on the states to use their sovereign powers as regulators of their citizens." *Travis v. Reno*, 163 F.3d 1000, 1004-05 (7th Cir. 1998).

That is precisely what this injunction does. While the ESA may apply to both private individuals and States, no entity apart from the State has sovereign power to indefinitely deny all septic system permits. That is a quintessential instance of "re-quir[ing] the States in their sovereign capacity to regulate their own citizens."

This Court has endorsed that view of the anti-commandeering doctrine. In *Bur-ban v. City of Neptune Beach*, the plaintiff attempted to force a municipal office to issue a form of identification that would entitle her to a concealed carry permit under federal law. 920 F.3d at 1276. This Court affirmed dismissal of the lawsuit on anti-comman-deering grounds despite the plaintiff's argument that the relevant law applied to private parties. *Id.* at 1281. The Court rejected that distinction and explained that the plaintiff's "proposal that we require states to issue identification plainly seeks to control how States regulate private parties, as opposed to regulating state activities." *Id.* Just so here: the injunction would require the Florida DEP to regulate its citizens to prevent *them* from allegedly violating a federal statute, which is a paradigmatic commandeering of state authority.

## II.     DEP will be irreparably harmed in the absence of a stay.

Where, as here, a state seeks to stay enforcement of a federal decree against it, "often 'the harms and equities [will be] very weighty on both sides,'" and consequently the "resolution of these stay requests ultimately turns on the merits and the question who is likely to prevail at the end of this litigation." *Ohio v. EPA*, 603 U.S. 279, 291 (2024). As a result, DEP's analysis of likelihood of success above provides a sufficient basis for granting a stay pending appeal.

In addition, DEP is likely to incur substantial costs complying with the injunction's requirements to apply for an ITP permit and establish manatee monitoring, feeding, and reporting programs that it will not be able to recoup from Plaintiff if this appeal is successful. This Court has repeatedly held that "unrecoverable monetary loss is an irreparable harm." *Georgia v. President of the U.S.*, 46 F.4th 1283, 1302 (11th Cir. 2022) (citing cases). Further, part of the injunction prevents DEP from issuing septic permits under state law, and "'any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018).

## III.   The balance of the equities supports granting a stay.

The public interest also counsels for granting a stay pending appeal. In the absence of a stay, DEP will be required to implement new manatee monitoring and feeding programs immediately, programs which it is not statutorily authorized to manage and which will likely be abandoned if DEP prevails before this Court on the merits.

*Supra* 10-12. This exercise will potentially waste considerable Florida tax dollars with no possibility of recovery.

The indefinite moratorium on the construction of new septic systems further threatens to impede commercial and residential development in the state. Florida law specifically *authorizes* construction using "nutrient-reducing onsite sewage treatment and disposal systems" or similar nitrogen-reducing "wastewater treatment systems." Fla. Stat. § 373.469. And the third-party property owners and developers affected by the court's decree have no ready means to challenge this moratorium, as they are not parties to this action. In addition, though Plaintiff described the moratorium as "temporary," it has no stated end date. It purports to remain in place unless and until DEP receives an Incidental Take Permit—by no means a sure thing. *See* R.190 at 3.

Finally, the public interest supports a stay because the federal government is poised to significantly amend its ESA regulations, which would moot both this case and the injunction's remedies. Plaintiff's case relies on federal regulations that expand the statutory definition of "harm" to include "significant habitat modification or degradation which kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." R.59 ¶¶ 16, 44 (quoting 50 C.F.R. § 17.3).

On April 17, 2025, the U.S. Fish and Wildlife Service and National Marine Fisheries Service published a proposed rule that would completely excise that definition of

"harm" under the ESA. *See* Rescinding the Definition of "Harm" Under the Endangered Species Act, 90 Fed. Reg. 16102, 16105 (Apr. 17, 2025). The proposed regulation instead rests only on the definition of "take," which "require[s] an affirmative act directed immediately and intentionally against a particular animal—not an act or omission that indirectly or accidentally causes injury to a population of animals." *Id.* at 16103 (cleaned up).

Plaintiff has never contended DEP is intentionally killing manatees via pollutants; it has instead rested its entire case on the notion that DEP "indirectly or accidentally causes injury" to manatees. If this new regulation is finalized, it will thus moot Plaintiff's entire case. It would represent an extraordinary waste of resources to force DEP to come into immediate compliance with an injunction that may in short order be foreclosed by federal law (even apart from DEP's case-specific defenses to liability and the injunction under existing law).

## IV. DEP respectfully requests a decision on this motion, or an administrative stay, by June 17.

As discussed, several key provisions of the injunction will take effect on June 17. DEP respectfully requests a decision on this stay motion by that date. DEP has taken all possible steps to obtain a prompt decision on its request for a stay. DEP moved for a stay in the district court just four days after the injunction was issued and is filing this motion just seven days after that.

Alternatively, if the Court is unable to rule on this motion before June 17, DEP respectfully requests an administrative stay of the injunction pending disposition of this motion. This Court can issue "administrative" relief that "buys the court time to deliberate" on a broader request for expedited relief. *United States v. Texas*, 144 S.Ct. 797, 798 (2024) (Barrett, J., concurring) (discussing administrative stays); *accord Klay v. United Healthgrp.*, 376 F.3d 1092, 1099-1100 (11th Cir. 2004). Their "point" is to "minimize harm" in the short period between now and "the time it takes" for the court to resolve the underlying motion. *Texas*, 144 S.Ct. at 798-99 (Barrett, J., concurring).

## CONCLUSION

This Court should stay the district court's injunction pending its consideration of the merits of this appeal. DEP respectfully requests a decision on this motion, or an administrative stay, before the injunction takes effect on June 17.

Dated: May 29, 2025

Jeffrey Brown
Department of Environmental Protection
390 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000
Telephone: (850) 245-2242
Jeffrey.Brown@FloridaDEP.gov

Respectfully submitted,

*/s/ Jeffrey M. Harris*
Jeffrey M. Harris
Bryan Weir
Nicholas B. Venable*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
jeff@consovoymccarthy.com

*Supervised by principals of the firm admitted to practice in Virginia*

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This motion complies with Rule 27 because it contains 5,174 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: May 29, 2025                                    _/s/ Jeffrey M. Harris_____


## CERTIFICATE OF SERVICE

I filed this motion with the Court via CM/ECF, which will send a notice of docketing activities to all parties who are registered through CM/ECF.

Dated: May 29, 2025                                    _/s/ Jeffrey M. Harris_____