No. 25-11612

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

BEAR WARRIORS UNITED, INC., a Florida Not for Profit Corporation,

*Plaintiff-Appellee,*

v.

ALEXIS LAMBERT, in her official capacity as Secretary of the FLORIDA
DEPARTMENT OF ENVIRONMENTAL PROTECTION,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Middle District of Florida
No. 6:22-cv-02048-CEM-LHP
Honorable Carlos E. Mendoza

---

## PLAINTIFF-APPELLEE'S OPPOSITION TO
## DEFENDANT-APPELLANT'S
## TIME-SENSITIVE MOTION FOR STAY PENDING APPPEAL

---

Lesley Blackner • FBN 065043
Lead Counsel
300 S. Duval Street #505
Tallahassee, FL 32301
Telephone: (561)-818-6621
lesleyblackner@gmail.com

Jessica L. Blome • Cal. Bar No. 314898
GREENFIRE LAW P.C.
2748 Adeline St., Suite. A
Berkeley, California 94703
Telephone: (510) 900-9502 ext. 703
jblome@greenfirelaw.com

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 and 26.1-2, the undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1. Bear Warriors United, Inc. – Appellee

2. Blackner, Lesley, G. – Counsel for Appellee Bear Warriors United, Inc.

3. Blome, Jessica L. – Counsel for Appellee Bear Warriors United, Inc.

4. Brown, Jeffrey – Counsel for Appellant Secretary Lambert

5. Corbani, Kelley F. – Counsel for Appellant Secretary Lambert

6. Consovoy McCarthy PLLC – Counsel for Appellant Secretary Lambert

7. Greenfire Law, PC – Counsel for Appellee Bear Warriors United, Inc.

8. Harris, Jeffrey M. – Counsel for Appellant Secretary Lambert

9. Lambert, Alexis, in her official capacity as Secretary of the Florida Department of Environmental Protection – Appellant

10. Mendoza, Honorable Carlos E. – Judge for the United States District Court of the Middle District of Florida

11. Price, Honorable Leslie H. – Magistrate Judge for the United States District Court for the Middle District of Florida

12. Venable, Nicholas B. – Counsel for Appellant Secretary Lambert

13. Weir, Bryan – Counsel for Appellant Secretary Lambert

Dated: June 9, 2025

*/s/ Jessica L. Blome*
Jessica L. Blome
Counsel for Plaintiff-Appellee

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION .............................................................................1

BACKGROUND................................................................................1

ARGUMENT ....................................................................................4

A.   This court lacks jurisdiction over Defendant's Time-Sensitive
Motion for Stay Pending Appeal. ................................................4

    1.   Defendant appealed from a non-final judgment................................4

    2.   Defendant's motion for a stay is premature. ....................................6

B.   Defendant is not entitled to a stay pending appeal. ......................8

    1.   Defendant will not succeed on the merits because the District
Court correctly concluded that Plaintiff has associational
standing to enforce the Endangered Species Act. ............................9

    2.   Defendant will not succeed on the merits because the District
Court correctly concluded that Defendant caused illegal take
of Florida Manatees in the North Indian River Lagoon. ................13

    3.   Defendant will not succeed on the merits because the District
Court correctly concluded that the anti-commandeering
doctrine does not apply....................................................................14

    4.   Defendant's compelled compliance with the minimum
requirements of federal law will not injure Defendant. .................16

    5.   Equity and the public interest desperately require
implementation of the District Court's injunction on July 17 .........17

CONCLUSION................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973)..............................................1

*Aransas Project v. Shaw*, 775 F.3d 641 (5th Cir. 2014) .........................................13

*Babbitt v. Sweet Home Chapter of Communities,* 515 U.S. 687 (1995).................18

*Bear Warriors United v. Hamiliton,* 749 F.Supp.3d 1217 (M.D. Fla. 2024) 9, 13, 14, 15

*Bear Warriors United v. Hamilton,* 760 F.Supp.3d 1374 (M.D. Fla. 2024) ........9, 13

*Bear Warriors United v. Lambert,* — F.Supp.3d — (M.D. Fla. 2025), 2025 WL 1122327....................................................................................passim

*Biden v. Nebraska,* 600 U.S. 477, 143 S.Ct. 2355, 216 L.Ed. 2d 1063 (2023)..............................................................................................................10

*Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs*, 162 F.3d 653 (11th Cir. 1998) ...............................................................................................................5

*CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325 (11th Cir. 2000) ..............4

*Ephraim Freightways, Inc. v Red Ball Motor Freight, Inc.,* 376 F.2d 40 (10th Cir. 1967)...............................................................................................14

*FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269 (1991)...................5

*Florida Panthers v. Collier County,* 2106 WL 1394328 (M.D. Fla.)......................13

*Garcia-Mir v. Meese*, 781 F2d 1450 (11th Cir. 1986).............................................1

*Gen. Television Arts, Inc. v. S. Ry. Co.*, 725 F.2d 1327 (11th Cir. 1984) ..................5

*Hilton v. Braunskill*, 481 U.S. 770 (1987)................................................................8

*Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737 (1976)..............................................5

*Loggerhead Turtle v. Cnty Council of Volusia County,* 148 F.3d 1231 (11th Cir. 1998) ....................................................................................................12

*Loggerhead Turtle v. County Council of Volusia County,* 896 F.Supp. 1170 (MD. Fla. 1995) ...............................................................................................19

*MSPA Claims 1, LLC v. Tenet Fla., Inc.,* 918 F.3d 1312 (11th Cir. 2019)...............10

*Murphy v. NCAA*, 584 U.S.453 (2018) .................................................15

*National Wildlife Fed'n v. Burlington Northern R.R.,* 23 F.3d 1508 (9th Cir. 1994) ...........................................................................................16

*Nken v. Holder*, 556 U.S. 418 (2009) .....................................................8

*Robinson v. Tanner*, 798 F.2d 1378 (11th Cir. 1986) ............................5

*Seattle Audubon v. Sutherland*, 2007 WL 1300964 (W.D. Wash. May 1, 2007) ...............................................................................................15

*Strahan v. Coxe,* 127 F.3d 155 (1st Cir. 1997) ...........................14, 15, 16

*Support Working Animals, Inc. v. Governor of Florida,* 8 F.4th 1198 (11th Cir. 2021) ......................................................................................12

*Tennessee Valley Auth. v. Hill*, 437 U.S. 153 (1978) .............................19

*Virginian Ry. Co. v. United States,* 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463 (1926) .........................................................................................8

**Statutes**

16 U.S.C. § 1532(13) ...............................................................................12

16 U.S.C. § 1538 ......................................................................................12

28 U.S.C. § 1291 ........................................................................................4

**Rules**

Fed. R. App. P. 3(c)(5) ............................................................................5, 6

Fed. R. App. P. 4(a)(2) ...............................................................................5

Fed. R. App. P. 54(a) ..................................................................................4

Fed. R. Civ. P. 4(a)(4)(A)(iii) ....................................................................4

Fed. R. Civ. P. 4(a)(4)(B)(i) .......................................................................5

Fed. R. Civ. P. 8(a)(1) ................................................................................6

Fed. R. Civ. P. 8(a)(2) ................................................................................6

**INTRODUCTION**

Defendant-Appellant Florida Department of Environmental Protection
moves the Court of Appeal to stay of an important, environmentally protective
injunctive meant to save the iconic Atlantic Coast Florida Manatee before another
manatee mortality catastrophe. Defendant made its motion before the District
Court ruled on the Motion for Stay Pending Appeal, in violation of the Federal
Rules of Appellate Procedure. A stay pending appeal is, moreover, an
"extraordinary remedy" for which the moving party bears a heavy burden. *Garcia-
Mir v. Meese*, 781 F2d 1450, 1455 (11th Cir. 1986); *see also Adams v. Walker*, 488
F.2d 1064, 1065 (7th Cir. 1973). Defendant has wholly failed to meet its burden.
For the foregoing reasons, Plaintiff-Appellee Bear Warriors United, Inc. asks the
Court of Appeal to quickly deny Defendant's request for a stay, so Florida can get
to work saving the Manatees by July 17, 2025, the date on which the District Court
expects Defendant to comply with the Endangered Species Act.

**BACKGROUND**

On May 9, 2025, Defendant filed its notice of appeal of the District Court's
April 14, 2025, "final order and judgment declaring Defendant in violation of the
Endangered Species Act." Declaration of Jessica L. Blome in support of Appellee's
Opposition to Defendant's Time-Sensitive Motion for Stay Pending Appeal, ¶ 2,
Exh. 1 (ECF No. 181). But none of the District Court's filings bear that name. *Id.*

at ¶ 3. Instead, on April 14, the District Court rendered two decisions that together make up a non-final order and a separate non-final judgment. First, on April 11, 2025, the District Court entered its "Order," which did not fully dispose of the case, as it directed Plaintiff to file a proposed injunction detailing its requested relief by April 25, 2025. *Id.* at Exh. 2 (ECF Nos. 172). The parties timely briefed the scope of injunctive relief. *Id.* at ¶ 4 (ECF Nos. 174, 174-1—174-6, 180). And on May 19, 2025, the District Court issued its "Order and Permanent Injunction" granting Plaintiff's request for a permanent injunction. *Id.* at Exh. 3 (ECF No. 190). The District Court gave Defendant until July 17, 2025, to comply with its permanent injunctive relief. *Id.* at ¶ 4.

Second, on April 14, 2025, the District Court separately rendered its "Judgment in a Civil Case," which directed that, "Any motions seeking an award of attorney's fees and/or costs must be filed within the time and in the manner prescribed in Local Rule 7.01, United States District Court Middle District of Florida." *Id.* at ¶ 5, Exh. 4 (ECF No. 173). The parties timely briefed the question of entitlement to attorneys' fees but await a decision from the District Court as of this filing. *Id.* at ¶ 5 (ECF Nos. 175, 176-1, 185, 185-1, 194).

Though the District Court's decision regarding attorneys' fees is still pending, Defendant filed its "Amended Notice of Appeal" on May 28, 2025,

designating the District Court's "Order and Permanent Injunction" as part of its original appeal. *Id.* at ¶ 6, Exh. 5 (ECF No. 195).

Defendant filed the instant "Time-Sensitive Motion for Stay Pending Appeal" on May 29, 2025. R. 6. In it, Defendant explains that it moved the District Court to stay its injunction pending appeal on Thursday, May 22, but Defendant leaves out that it filed its motion at 5:14, p.m. and requested a "time-sensitive" ruling by Wednesday, May 28, 2025, just two days after Memorial Day. Blome Decl. ¶ 7. Understandably, on Tuesday, May 27, 2025, the District Court issued its Order denying Defendant's motion "in part." Blome Decl. ¶ 8. The District Court's ruled, "The Motion is denied insofar as it seeks a ruling by the Court on or before May 28, 2025. The remainder of the Motion will be addressed in a written order." Signed by Judge Carlos E. Mendoza on 5/27/25." *Id.* (ECF No. 193).

Plaintiff timely filed its "Memorandum in Opposition to Defendant's Motion for Stay" on June 5, 2025. *Id.* at ¶ 9 (ECF No. 200).

On June 6, 2025, Defendant filed an unopposed motion to consolidate its original appeal with its amended appeal, but neither appeal is taken from a final order. R. 6.

The District Court denied Defendant's Motion for Stay on June 9, 2025. Blome Decl. ¶ 11, Exh. 7.

# ARGUMENT

Defendant is not entitled to a stay of the District Court's permanent injunction pending appeal because this Court lacks jurisdiction over the District Court's non-final orders and because Defendant failed to make its "heavy burden" to demonstrate it is entitled to a stay on the merits.

### A.    This court lacks jurisdiction over Defendant's Time-Sensitive Motion for Stay Pending Appeal.

### 1.    Defendant appealed from a non-final judgment.

Under the Federal Rule of Appellate Procedure, a "judgment" includes "a decree or any order from which an appeal lies." Fed. R. App. P. 54(a). But the courts of appeal only have jurisdiction over *final* decisions of the district courts. *See* 28 U.S.C. § 1291 (providing that the courts of appeals have jurisdiction over "appeals from all final decisions of the district courts"); *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000) ("A final decision is one which ends the litigation on the merits.").

In addition, if a party files a Rule 54 motion for attorneys' fees in the District Court, then the "time to file an appeal runs for all parties from the entry of the order disposing of the last remaining such motion." Fed. R. Civ. P. 4(a)(4)(A)(iii). "If a party files a notice of appeal after the court announces or enters a judgment— but before it disposes of any motion [for attorneys' fees]—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order

disposing of the last such remaining motion is entered." *Id.* at 4(a)(4)(B)(i). In other words, "a notice of appeal encompasses the final judgment, whether or not that judgment is set out in a separate document under Federal Rule of Civil Procedure 58" only if the notice designates "an order that adjudicates *all remaining claims and the rights and liabilities of all remaining parties*." Fed. R. App. P. 3(c)(5) (emphasis added); *see also Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) (holding that an order granting partial summary judgment on the issue of liability that leaves the assessment of damages or awarding of relief to be determined is not final); *Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs*, 162 F.3d 653, 661 (11th Cir. 1998) (holding that a notice of appeal must designate an existent judgment or order, not one that is merely expected or within the appellant's contemplation when the notice of appeal is filed); *Robinson v. Tanner*, 798 F.2d 1378, 1385 (11th Cir. 1986) (holding that where a notice of appeal is filed from a non-final interlocutory order, a subsequent final judgment generally does not retroactively validate the premature notice of appeal).

A notice of appeal "filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 276 (1991) (interpreting Fed. R. App. P. 4(a)(2)); *see also Gen. Television Arts, Inc. v. S. Ry. Co.*, 725 F.2d 1327, 1330-31 (11th Cir. 1984) (stating that Rule 4(a)(2) "was

not intended to validate anticipatory notices of appeal filed prior to the announcement" of an order or judgment)).

Defendant's first appeal stems from a non-final order, ECF No. 172, and non-final judgment, ECF No. 173, each of which directed the parties to dispose of two remaining issues, respectively: the scope of injunctive relief and Plaintiff's attorneys' fees claims. Defendant's second appeal stems from a second non-final order that settled the issue of injunctive relief but did not dispose of Plaintiff's Rule 54 motion. Defendant appealed twice in anticipation of the District Court's final order. The Court of Appeal does not yet have jurisdiction over this appeal because the District Court has not yet rendered its final judgment disposing "*all remaining claims and the rights and liabilities of all remaining parties*." Fed. R. App. P. 3(c)(5) (emphasis added).

## 2.     Defendant's motion for a stay was premature.

Federal Rules of Appellate Procedure Rule 8(a)(1) provides, "A party must ordinarily move first in the district court" for a "stay of the judgment or order of a district court pending appeal." Fed. R. Civ. P. 8(a)(1). The motion "must show that moving in the district court would be impracticable or state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." *Id.* at R. 8(a)(2). Defendant failed to comply with Rule 8, so its motion must be denied.

Defendant must re-file its motion, so it can comply with Rule 8's requirement that Defendant address the District Court's findings in its own denial, which issued on June 9, 2025. *See* Blome Decl. Exh. 7.

The District Court denied Defendant's motion for stay in two parts. On May 27, the District Court denied Defendant's incredibly unreasonable demand to rule on the motion within two court days and without the benefit of Plaintiff's opposition briefing. Blome Decl. Exh. 6. On June 9, 2025, the District Court denied Defendant's motion for stay entirely. *Id.* at Exh. 7. But Defendant filed its motion for stay prematurely, before the District Court could rule on the merits of the motion. Defendant's failure to comply with Rule 8 resulted in the filing of a non-compliant motion for stay in the Court of Appeals that fails to comply with Rule 8's requirement that Defendant address the District Court's findings in its motion before this Court.

Procedural defects notwithstanding, Defendant has no excuse for its rush job. The District Court's injunction does not go into effect until July 17, which, as of the day of this filing, gave the District Court several weeks to rule on the motion for stay before the injunction went into effect. Defendant hopes the Court of Appeal will skip over the District Court's decision, but the Federal Rules of Appellate Procedure require the District Court's denial before it has jurisdiction

over Defendant's premature motion to this Court. The Court of Appeal should deny Defendant's motion.

## B. Defendant is not entitled to a stay pending appeal.

The U.S. Supreme Court has advised courts to consider the following four factors in deciding whether to stay a lower court's ruling pending the outcome of the appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *See Nken v. Holder,* 556 U.S. 418, 434 (2009) (cleaned up) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical" and require more than a mere "possibility" of success on the merits or irreparable harm. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Further, as the Supreme Court summarized in *GRACE, Inc*.: "A stay is not a matter of right, even if irreparable injury might otherwise result." *GRACE, Inc.,* 685 F.Supp. at 1369 (citing *Nken v. Holder,* 556 U.S. 418, 433 (2009); *Virginian Ry. Co. v. United States,* 272 U.S. 658, 672 (1926)). It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances the particular case." *Id. (*quoting *Virginian Ry. Co.,* 272 U.S. at 672-73). Accordingly, the party requesting a stay "bears the burden of showing that the

circumstances justify an exercise of that discretion." *GRACE, Inc.,* 685 F.Supp. at

1369 (citing *Nken,* 556 U.S. at 433-44).

> **1.** **Defendant will not succeed on the merits because the District Court correctly concluded that Plaintiff has associational standing to enforce the Endangered Species Act.**

Not once, not twice, but three times Defendant challenged Plaintiff's

standing to bring this action. In its Motion to Dismiss, its Motion for Summary

Judgment, and finally at trial, Defendant attacked Plaintiff's standing. *See Bear*

*Warriors United v. Hamiliton,* 749 F. Supp. 3d 1217 (M.D. Fla. 2024) (*Bear*

*Warriors I*); *Bear Warriors United v. Hamilton,* 760 F.Supp.3d 1374 (M.D. Fla.

2024), (*Bear Warriors II*); *Bear Warriors United v. Lambert,* — F.Supp.3d —

(M.D. Fla. 2025), 2025 WL 1122327(*Bear Warriors III*). A review of the District

Court's orders demonstrates the District Court's repeated, detailed attention to the

question of whether Plaintiff established standing. The District Court properly

concluded that Plaintiff did establish the elements of standing.

**1. Injury in Fact.** Defendant contends that the Eleventh Circuit is likely to

reverse the injunction because, "Plaintiff has not shown sufficient likelihood of

future injury to secure the type of broad injunction that it obtained from this

Court." R. 6, p. 5. However, in *Bear Warriors I,* the District Court held that:

> As an initial matter, Defendant does not dispute that Plaintiff has
> alleged an actual or imminent injury-in-fact, which is harm to
> "Plaintiff members' opportunities to observe, study, contemplate, and
> enjoy manatees that both migrate through and reside full time in the

North [Indian River Lagoon] IRL." ECF No. 59 at 6-7. The Court agrees…

*Bear Warriors I*, 749 F.Supp.3d at 1224. Notably, Defendant did not contest standing in its Motion for Summary Judgement but raised it in its Response to Plaintiff's Motion and during oral argument. The District Court again rejected the challenge. *Id.* at 1378. Finally, in its April 11, 2025, Order, at the behest of Defendant, the District Court yet again considered the question of whether Plaintiff established imminent or future harm sufficient to establish standing, holding that:

> "The association must allege that its members, *or any one of them,* are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Hunt,* 432 U.S. at 342, 97 S.Ct. 2434 (emphasis added) (quoting *Warth*, 422 U.S. at 511, 95 S.Ct. 2197). So, a member "must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money—that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit." *Biden v. Nebraska,* 600 U.S. 477, 489, 143 S.Ct. 2355, 216 L.Ed. 2d 1063 (2023).

> While Plaintiff has presented evidence that its members have suffered emotional harm from, among other things, experiencing the deterioration of the RL and seeing many dead and decomposing manatees, it also provides evidence that at least one of its members has suffered a financial injury, (describing how he has "lost significant income" and the damage to his kayaking tour business because of pollution and absence of manatees in the IRL)). Thus, at least one of Plaintiff's members has suffered a "type of economic injury, which is the epitome of 'concrete.'" *MSPA Claims 1, LLC v. Tenet Fla., Inc.,* 918 F.3d 1312, 1318 (11th Cir. 2019). The evidence presented at trial has also established that Plaintiff's members are likely to encounter dead manatees again as discussed below.

*Bear Warriors III,* 2025 WL at *3 (record citations & footnotes omitted). The record clearly supports the District Court's finding that Plaintiff, through its members, presented evidence sufficient to meet the injury in fact requirement for standing.

**2. Traceability**. Next, Defendant argues that Plaintiff failed to meet the traceability requirement for standing because Defendant only assumed control over the septic tank program in 2021 from the Florida Department of Health, and the destruction of seagrass in the North IRL is the result of "legacy pollutants." Defendant fails to mention that the evidence presented at trial established that the ongoing ecological collapse of the IRL is the result of "previously and *currently permitted discharge* of legacy pollutants via wastewater into the North IRL." *Bear Warriors III,* 2025 WL at *5 (emphasis added). Plaintiff proved both past and ongoing seagrass devastation resulting from sewage discharges into the North IRL.

Indeed, in both *Bear Warriors United I* and *II,* the District Court found that Plaintiff connected the dots between Defendant's regulatory authority over wastewater, the authorized discharge of wastewater into the North IRL, and the resulting ongoing eutrophication, death of seagrass and harmful impacts to federally protected manatees. Plaintiff conclusively established the chain of causation, as, according to this court, unlawful take of manatees "can be fairly traced to the actions of both parties and non-parties." *Bear Warriors III,* 2025 WL

at *3, quoting *Loggerhead Turtle v. Cnty Council of Volusia County,* 148 F.3d 1231, 1247 (11th Cir. 1998).

**3. Redressability**. As to Defendant's assertion that the District Court's order requiring Defendant to apply for an Incidental Take Permit (ITP) somehow thwarts Plaintiff's standing, R. 6, pp. 9-10, Defendant forgets that Plaintiff's prayer for relief included this precise request, to bring Defendant into compliance with the ESA. An ITP includes a habitat management plan, as well as measures to minimize and mitigate take. Bringing Defendant into compliance with the ESA would redress of Plaintiff's injuries, to be sure, but the ordering of relief does not obviate Plaintiff's standing to bring the case at the outset; Defendant's interpretation is absurd.

Moreover, at page ten of its Motion, R., p. 6, Defendant fails to recognize that the ESA's Section 9 prohibition applies to any "person," 16 U.S.C. § 1538, and "person" is explicitly defined to include "any officer, employee, agent, department, or instrumentality …. of any State…" 16 U.S.C. § 1532(13). Defendant is expressly subject to the ESA's take prohibition. Plaintiff did not bring this action "to enjoin a government official from enforcing a law…" R., p. 10 (quoting *Support Working Animals, Inc. v. Governor of Florida,* 8 F.4th 1198, 1201 (11th Cir. 2021)). Rather, Plaintiff brought this action to bring Defendant into compliance with the ESA. Plaintiff sued the correct defendant.

**2. Defendant will not succeed on the merits because the District Court correctly concluded that Defendant caused illegal take of Florida Manatees in the North Indian River Lagoon.**

In three separate orders, the District Court reviewed the chain of causation between Defendant's sewage regulatory scheme, which led to nitrogen loading into the North IRL, eutrophication, harmful algae blooms, seagrass destruction, and the resulting take of manatees who occupy the lagoon. In its instant motion, Defendant yet again complains that the chain of causation is too attenuated to support a claim of unlawful take under the ESA, and continues to rely on *Aransas Project v. Shaw*, 775 F.3d 641 (5th Cir. 2014) and *Florida Panthers v. Collier County,* 2106 WL 1394328 (M.D. Fla.). The District Court found these cases inapposite.

As the District Court noted, *Aransas Project* is distinguishable because the chain of causation between the issuance of water withdrawal permits and the deaths of whooping cranes was broken by "'multiple, natural, independent, unpredictable and interrelated forces.'" *Bear Warriors I,* 749 F.Supp.3d at 1232 (quoting *Aransas Project,* 775 F.3d at 663). This point was reiterated in *Bear Warriors II,* in which the District Court noted that the whooping cranes died during "a year of extraordinary drought." *Bear Warriors II,* 760 F.Supp.3d at 2407.  Such is not the case here.  This case presented overwhelming evidence that nitrogen loading into the North IRL is not an extraordinary event. It has been going on for decades and continues to go on because it is *authorized by Defendant. Bear Warriors II,* 760 F.Supp.3d at 2407.

The District Court also properly found *Florida Panthers* inapplicable to the instant case because defendant Collier County expressly required compliance with all federal law (which included the ESA) before granting any land clearing permit that might impact Florida panthers and their habitat. *Bear Warriors I,* 749 F.Supp.3d at 1231-32. Such is not the case here. This issue was repeatedly rejected by the District Court, and Defendant's argument should be rejected again.

Defendant also ignores the broad equitable powers vested in this court to craft equitable relief. *See Strahan v. Coxe,* 127 F.3d 155 (1st Cir. 1997). "The ESA does not limit the injunctive power available in a citizen suit, and thus, we understand the Act to grant a district court the full scope of its traditional equitable injunctive powers." *Id.* "Equitable injunction includes the power to provide complete relief in light of the statutory purpose.'" *Id.* at 170 (quoting) *Ephraim Freightways, Inc. v Red Ball Motor Freight, Inc.,* 376 F.2d 40, 41 (10th Cir. 1967).

The District Court correctly determined that Plaintiff has standing to bring this action, and Defendant presents no compelling facts or law to the contrary.

### 3. Defendant will not succeed on the merits because the District Court correctly concluded that the anti-commandeering doctrine does not apply.

In both its Order on Motion to Dismiss, *Bear Warriors I*, and its Order Granting Judgment, *Bear Warriors II*, the District Court rejected Defendant's

anticommandeering argument. Defendant now raises it again, in support of its motion to stay the injunction. This argument remains absolutely without merit.

This case was brought to remedy a violation of the ESA. In its order denying Defendant's motion to dismiss, the District Court held, "If the court finds for [Plaintiff] on the merits, it can craft an injunction that orders [Defendant]to stop violating the ESA, but avoids" violating the Tenth Amendment." *Bear Warriors I,* 749 F.Supp 3d at 1229 (quoting *Seattle Audubon v. Sutherland,* 2007 WL 1300964, at *14 (W.D. Wash. May 1, 2007)). And that is exactly what the District Court did. In its Order, the District Court observed that the ESA directly applies to every person, including Defendant, and "[t]he anticommandeering doctrine does not apply when Congress evenhandedly regulates an activity in which both States and private actors engage." *Bear Warriors III,* 2025 WL *4 (quoting *Murphy v. NCAA,* 584 U.S.453, 475-76 (2018)).

The District Court also relied upon *Strahan v. Coxe,* 127 F.3d 155 (1st Cir. 1997). In *Strahan,* the First Circuit held that the district court was within its equitable power to craft broad injunctive relief for the federally endangered Northern Right Whale once it found that a Massachusetts' agency fishing regulatory scheme violated the ESA. The First Circuit upheld injunctive relief, which included ordering the state agency defendant to apply for an Incidental Take Permit pursuant to the ESA; "develop and prepare a proposal…to restrict, modify

or eliminate the use of fixed-fishing gear…"; and "convene an Endangered Whale Working Group…" to minimize harm to the whales. *Id*. at 158.

The injunctive relief ordered by the District Court aims to reduce and ultimately eliminate take of manatees in the North IRL by bringing Defendant into compliance with the ESA. There is no anti-commandeering problem in this case.

### 4. Defendant's compelled compliance with the minimum requirements of federal law will not injure Defendant.

Under the ESA, the balancing and public interest prongs have been answered by Congress' determination that the "balance of hardships and the public interest tips heavily in favor of protected species." *National Wildlife Fed'n v. Burlington Northern R.R.,* 23 F.3d 1508, 1510 (9th Cir. 1994); *Strahan v. Coxe*, 127 F.3d 155, 160 (1st Cir. 1997). Yet, without a shred of evidence, Defendant complains that it "is likely to incur substantial costs complying with the injunction's requirements." R. 6, p. 20. Defendant, an agency of the State of Florida, has access to vast resources, including, but not limited to state universities, sister agencies, and even federal agencies and resources.  A cursory review of Defendant's website reveals the following resources that can be quickly marshalled to implement the injunction:

Ecosystems Restoration Programs:

- The Office of Resilience and Coastal Protection coordinates the protection of the state's coastal resources, including submerged

lands and coastal uplands, aquatic preserves and national estuarine research reserves, and coral reef resources.

- The Division of Environmental Assessment and Restoration monitors and assesses Florida's surface water and groundwater quality; develops strategies to resolve water quality issues; and implements those strategies in partnership with local stakeholders.
- The Division of Water Restoration Assistance provides grants and loans to local governments, utilities and other agencies for projects that improve the quality and quantity of the state's water resources and benefit the environment and local communities.
- The Office of Water Policy and Ecosystems Restoration is responsible for the regulatory programs that focus on water supply protection and environmental restoration in Florida.

*See* FDEP, Ecosystems Restoration Page, available at https://floridadep.gov/eco-rest (last visited June 4, 2025). Congress mandates that Florida comply with the ESA, and it will not suffer irreparable injury because it finally does so under court order.

### 5. Equity and the public interest desperately require implementation of the District Court's injunction on July 17.

Even though Defendant is the Secretary of the *Department of Environmental Protection,* Defendant continues to demonstrate negligible concern for Florida's most iconic native resident: the Florida manatee. Instead, Defendant is concerned with keeping construction full tilt. R. 6, p. 22. Defendant's motion reveals that it is crossing its fingers hoping that a proposed rule change to completely redefine the meaning of harm under 50 C.F.R pt. 17 will moot the instant case. R. 6, p. 22. Defendant ignores the District Court's order finding that Defendant has taken

manatees through harm and harassment, avoids any real analysis of the statutory meaning of take, and speculates as to what a future court may conclude *if* the rule change ever goes into effect. In so doing, Defendant hopes the Court of Appeal will simply ignore thirty years of caselaw, beginning with the United States Supreme Court's resolute rejection of a proposed redefinition in *Babbitt v. Sweet Home Chapter of Communities,* 515 U.S. 687 (1995). At any rate, Defendant's point is irrelevant to the Court of Appeal's present deliberations. For the foreseeable future, the definitions of harm and harassment continue to include habitat modification that interferes with the breeding, feeding, or sheltering of listed species. 50 C.F.R. §17.3.

Plaintiff, on the other hand, will be harmed if the injunction is stayed because Defendant's conduct will continue to harass, harm, and kill manatees. Manatees need medical monitoring and a supplemental feeding program now, to avert more deaths, poor health, and more suffering. Data needs to be routinely obtained and made publicly available to understand if harmful algae blooms are incipient, if seagrass is returning, and what decisions need to be made to maximize manatee health and avoid another manatee mortality catastrophe. A temporary moratorium on the issuance of new residential and commercial construction that uses septic tanks will serve the important function of *stopping the addition of new sources of nitrogen that load into the North IRL* while the ITP application is

processed. This is consistent with the District Court's finding that it is "imperative to reverse the damage to the North IRL." *Bear Warriors III,* 2025 WL at *7. This needs to start now.

Judge Conway's order granting a partial preliminary injunction in *Loggerhead Turtle* is instructive to the Court of Appeal's deliberation on the request for stay:

> The broad language of the Endangered Species Act and the pronouncements of the Supreme Court persuade this Court that, in considering the entry of an injunction under the Endangered Species Act: (1) the Court does not have the "traditional equitable discretion" to balance the parties' interests, (2) any threatened harm is *per se* irreparable harm, and (3) the public interest always favors the imposition of an injunction under the Act.

*Loggerhead Turtle v. County Council of Volusia County,* 896 F.Supp. 1170, 1178 (MD. Fla. 1995) (applying *Tennessee Valley Auth.,* 437 U.S. 153 (1978) (accord *National Wildlife Fed'n,* 23 F.3d at 1511)). Beginning the intense and sustained commitment to protecting manatees that have called the North IRL home needs to start now. Postponement will be harmful to manatees and contrary to the goal of the ESA: to conserve and recover manatees "at whatever the cost." *Tennessee Valley Auth. v. Hill*, 437 U.S. 153 (1978). Compliance with the ESA is indisputably in the public interest.

**CONCLUSION**

Plaintiff-Appellee respectfully requests that the Court of Appeal deny

Defendant-Appellant's premature request for stay of injunction pending appeal.


Dated: June 9, 2025,                    Respectfully submitted,

                                        Lesley Blackner • FBN 065043
                                        Lead Counsel
                                        300 S. Duval Street #505
                                        Tallahassee, FL 32301
                                        Telephone: (561)-818-6621
                                        lesleyblackner@gmail.com

                                        */s/ Jessica L. Blome*
                                        Jessica L. Blome • Cal. Bar No. 314898
                                        GREENFIRE LAW P.C.
                                        2748 Adeline St., Suite. A
                                        Berkeley, California 94703
                                        Telephone: (510) 900-9502 ext. 703
                                        jblome@greenfirelaw.com

**CERTIFICATE OF COMPLIANCE**

This motion complies with Rule 27 because it contains 4,683 words excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced font using Microsoft Word in 14-point Times Roman font.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system.

Dated: June 9, 2025        */s/ Jessica L. Blome*
                                      Jessica L. Blome
                                      Counsel for Plaintiff-Appellee